IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

UNITED STATES OF AMERICA,

                    Plaintiff,

          v.

WAYNE J. MORUZIN,

                    Defendant.

Cr. No. 05-306 (JBS)

**OPINION**

**APPEARANCES:**

Christopher J. Christie,
United States Attorney
By:  Ronald Chillemi, AUSA
United States Attorney's Office
U.S. Post Office & Courthouse
401 Market Street, Fourth Floor
Camden, New Jersey  08101

Mark W. Catanzaro, Esquire
Blason IV - Suite 208
513 South Lenola Road
Moorestown, New Jersey  08057
     Counsel for Defendant

**SIMANDLE, U.S. District Judge:**

I.  INTRODUCTION

     Defendant Wayne J. Moruzin, charged with bank robbery and
attempted jury tampering, represented himself in the trial
preparation phase of this case, having waived his right to
counsel.  When his behavior became more implausible, self-
defeating, and sometimes bizarre, this Court ordered an
evaluation of his mental competency to stand trial, under the
authority of 18 U.S.C. § 4241(b), because there was "reasonable

cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent," under 18 U.S.C. § 4241(a).  This Court, by Order filed April 7, 2006, ordered a mental competency evaluation.

The Federal Bureau of Prisons ("BOP"), which had been holding Moruzin in pretrial detention at the Federal Detention Center in Philadelphia ("FDC Philadelphia"), transferred him to the Federal Medical Center in Lexington, Kentucky ("FMC Lexington") for purposes of a competency evaluation by the mental health professionals there.

The evaluation was completed during June and July of 2006, and a comprehensive Forensic Report, dated August 7, 2006 (Ex. G-2) was prepared and forwarded to the Court and provided to counsel.  On September 7, 2006, this Court revoked Moruzin's <u>pro se</u> status pending resolution of his mental competence.  Also on that day, attorney Mark W. Catanzaro, a member of this Court's Criminal Justice Act Panel, who had served as stand-by counsel during Defendant's self-representation, was appointed as counsel pursuant to the Criminal Justice Act for purposes of representing Moruzin, since representation by counsel is required at a competency hearing, <u>see</u> 18 U.S.C. § 4247(d).[1]

---

[1] To the extent that Mr. Moruzin has again requested to represent himself (see Ex WM-5, Docket Item 84, Letter dated Sept. 23, 2006), that request must be denied.  The level of competence required to waive the right to counsel is the same as the level of competence required to proceed to trial.  <u>United</u>

The hearing was convened on October 5, 2006, at which time the Court heard the testimony of the BOP's Forensic Psychologist, Judith (Betsy) Campbell, Ph.D., who authored the final report. (Ex. G-2.)  Various exhibits were also received into evidence, including detailed testing results (Exs. G-3A & 3B) and eight letters written by Mr. Moruzin from his confinement before, during, and after the competency evaluation (Exs. WM-1 through WM-8.)  Mr. Moruzin attended and declined to testify at the hearing.  As explained in Part III below, this Court has carefully evaluated Moruzin's competency by considering such factors as evidence of irrational behavior, demeanor in court, mental health diagnosis, and Dr. Campbell's opinion regarding Moruzin's lack of present competency.  This Court finds that Mr. Moruzin is suffering from a mental disease or defect rendering him mentally incompetent to stand trial, pursuant to 18 U.S.C. § 4241(d) and applicable case law.

## II.  COMPETENCY HEARING PROCEDURE

In order to determine a criminal defendant's competency to stand trial, the district court must follow a mandatory process set forth in 18 U.S.C. § 4241.  See United States v. Haywood, 155 F.3d 674, 680 (3d Cir. 1998).  "The steps in that process are

States v. Vazquez, 2002 WL 31769703 (S.D.N.Y. 2002) (citing Godinez v. Moran, 509 U.S. 389, 399 (1993)).

intended to culminate in a record-based judicial determination of competence in every case in which there is reason to doubt the defendant's competence to stand trial...[t]he Due Process Clause of the Constitution requires no less." Id. (citing Pate v. Robinson, 383 U.S. 375, 385 (1966)). First, a district court has a duty to order a competency hearing "at any time prior to sentencing of the defendant...if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent." 18 U.S.C. § 4241(a). Next, the court may order "a psychiatric or psychological examination of the defendant, and that a psychiatric or psychological report be filed with the court" to provide evidence for the hearing." Id. at § 4241(b).

Third, if the Court determines that it must hold a competency hearing, the hearing must be conducted pursuant to 18 U.S.C. § 4247(d). Id. at § 4241(c). Under Section 4247(d):

> At a hearing ordered pursuant to this chapter the
> person whose mental condition is the subject of the
> hearing shall be represented by counsel . . . . The
> person shall be afforded the opportunity to testify, to
> present evidence, to subpoena witnesses on his behalf,
> and to confront and cross-examine witnesses who appear
> at the hearing.

18 U.S.C. § 4247(d). Upon the conclusion of the hearing, the district court may make a determination regarding the defendant's competency which is guided by 18 U.S.C. § 4241(d) which states, in pertinent part:

> If, after the [competency] hearing, the court finds by
> a preponderance of the evidence that the defendant is
> presently suffering from a mental disease or defect
> rendering him mentally incompetent to the extent that
> he is unable to understand the nature and consequences
> of the proceedings against him or to assist properly in
> his defense, the court shall commit the defendant to
> the custody of the Attorney General.

18 U.S.C. § 4241(d).

The Third Circuit has interpreted Section 4241(d) to mean that a district court must look at the unique circumstances of the case and decide whether, by the preponderance of the evidence, the defendant:

> (1)  is presently suffering from a mental
>      disease or defect; and
>
> (2)  such mental disease or defect renders
>      him such that he:
>
>      (a)  does not have the capacity to
>           assist in his own defense
>           (i.e., the defendant does not
>           have "the present ability to
>           consult with [defense counsel]
>           with a reasonable degree of
>           rational understanding"), or
>
>      (b)  cannot comprehend the nature
>           and possible consequences of a
>           trial (i.e., the defendant
>           does not have "rational as
>           well as factual understanding
>           of the proceedings.")

United States v. Leggett, 162 F.3d 237, 242 (3d Cir. 1998) (quoting Drope v. Missouri, 420 U.S. 162, 171 (1975)); see also United States v. Stanford, 69 Fed. Appx. 518, 521 (3d Cir.

5

2003)).  In determining whether a defendant satisfies this two-prong test, a court must consider a number of factors, including:

    (1)   evidence of a defendant's irrational behavior;

    (2)   any prior medical opinion on the defendant's competence to stand trial; and

    (3)   the defendant's demeanor at trial and/or hearings.

In affirming a judgment of conviction and sentence from the District Court for the Eastern District of Pennsylvania, the Third Circuit noted additional factors considered by the district court regarding the defendant's competency.  See Leggett, 162 F.3d at 244; Stanford, 69 Fed. Appx. at 522.  Specifically, the court considered the fact that defendant (a) demonstrated an ability to serve his own interest before the court (e.g., showed working knowledge of trial tactics and importance of underscoring potential errors on the record); (b) took notes, conversed with counsel and reacted reasonably to the admission of evidence; and (c) made statements demonstrating the comprehension of legal concepts (such as waiver) that demonstrated that he had a rational and factual understanding of the hearing and pending trial.  See Leggett, 162 F.3d at 244.

In Stanford, the Third Circuit affirmed an appeal from the Eastern District of Pennsylvania (Yohn, J.) stating that "the District Court had no reasonable cause to believe that [the

defendant] was presently suffering from an impairment resulting
in mental incompetency" at the time of defendant's plea.
Stanford, 69 Fed. Appx. at 522.  The Third Circuit cited Judge
Yohn's actions of (1) placing into evidence two psychological
reports addressing the defendant's competency to stand trial, (2)
hearing testimony from a psychiatrist who found the defendant
competent, (3) questioning defense counsel about the defendant's
mental competency (and the reasons for counsel's conclusion that
defendant was competent), and (4) conducting a colloquy with
defendant to inquire about the care the defendant was under and
whether he understood the proceedings, all as support for the
district court's conclusion that the defendant was competent to
stand trial.


III.  FINDINGS

    Applying these principles to the circumstances of this case,
this Court finds as follows:

    Wayne Moruzin, age 52, has suffered a lengthy history of
mental disorders, accompanied by heavy and prolonged drug abuse.
He described to Dr. Campbell an extremely chaotic childhood (Ex.
G-2 at p. 3), as his father died when he was seven and his mother
died of a drug overdose when he was 18.  He was repeatedly
confined for juvenile offenses and reports being sexually abused.
He received mental health treatment as an adult confined in the

New Jersey Department of Corrections and has been diagnosed with Bipolar Disorder, Major Depression with Psychotic Features, and Panic Disorder, and has experienced severe mood swings.  His moods varied from periods of rage, mania, and delusional behavior to periods of depression and isolation.  He has ben prescribed various drugs as a mood stabilizer (Depakote), an anti-depressant (Desyrel), and an anti-anxiety medication (Klonopin).  At present, however, he has not been prescribed drugs by the BOP for mental illness.

His drug abuse history includes significant addiction to alcohol, marijuana, powder and crack cocaine, heroin, benzodiazepines, barbiturates, and methamphetamine.  (Ex. G-2 at p.4.)  He was in methadone maintenance programs to treat heroin addiction in 1994, 1995, 2003, and 2004.

Dr. Judith (Betsy) Campbell, who performed the mental health evaluation, examined records of Moruzin's prior mental health treatment and administered tests including the Wechsler Adult Intelligence Scale III and the Minnesota Multiphasic Personality Inventory - Second Edition ("MMPI-2").  She found that his responses to the MMPI-2 were "extremely exaggerated and inconsistent ... endorsing a wide variety of symptoms and attitudes," suggesting he is experiencing "severe psychological deterioration or psychosis."  Ex. G-2 at p. 6.

His attitude toward the evaluator was distrustful and paranoid, believing her to be a "spy" and a "traitor," while in reality, she is a highly competent professional doing the task of an evaluation.  Similarly, he has repeatedly expressed antipathy toward court-appointed counsel, Mr. Catanzaro; during the time Mr. Catanzaro served as stand-by counsel, he chastised Mr. Catanzaro repeatedly for not doing more to defend him (even though he had elected to represent himself and was repeatedly told that the role of stand-by counsel is limited to giving advice when asked), even going so far as to accuse Mr. Catanzaro of trying to undermine his case, while in reality, Mr. Catanzaro had assisted him in lining up a private investigator and a defense psychiatrist to evaluate the viability of an insanity defense.[2]  His behavior toward Mr. Catanzaro has been entirely unwarranted and irrational.

---

[2] At several hearings earlier in the case, Mr. Moruzin, who is accused of robbing a bank at which he was a known customer, said he must have been insane to commit such a robbery and that he was intoxicated by drugs at the time.  He believes, incorrectly as a matter of law, that his voluntary drug intoxication requires his acquittal, and he does not seem to understand why this case has not been dismissed against him due to his drug dependence.  These matters were previously briefed by the parties and addressed by the Court.  The Court's Order of January 5, 2006 determined that Moruzin's alleged voluntary intoxication may be considered by the jury only with respect to determining whether his custodial post-arrest statements to police were knowing, voluntary, and credible.  He did not file any psychiatric report in support of an insanity defense within the time required by Rule 12.2(b), Fed. R. Crim. P., and the matter of insanity is not addressed at this time.

Dr. Campbell also described Mr. Moruzin's refusals to cooperate with her in the evaluation interviews, about halfway through the process.  He refused to leave his Special Housing Unit (SHU) and refused three to four attempts by Dr. Campbell to speak together.[3]  Instead, he wrote disparaging letters to her (Exs. WM-6 (June 20, 2006) and WM-8 (July 16, 2006)).  He accused her of being a "pawn" who "will do precisely what you are instructed to do," the same as "the lawyer and the judge."  (Ex. WM-6.)  He blasts her for being a female, since "women have always been empowered with tremendous deceptionary skills."  (Ex. WM-8).  He admonishes her to "pay heed to my decision" not to speak with her, and he again calls her a "double agent."  (Id.)

Although Dr. Campbell's initial report stated that Mr. Moruzin was incompetent to the extent that he was neither (1) unable to understand the nature and consequences of the proceedings against him or (2) to assist properly in his defense, at Moruzin's competency hearing, Dr. Campbell revised her conclusions somewhat, in her hearing testimony, concluding that Mr. Moruzin was able to understand the nature and consequences of the proceedings, but nonetheless remained incompetent because he was unable to assist properly in his defense.

---

[3] Moruzin's eventual refusal to speak with Dr. Campbell resulted in Dr. Campbell having only 2 to 2 1/2 hours to personally review Mr. Moruzin whereas Dr. Campbell generally spends between 8 and 10 hours personally reviewing an evaluatee.

In short, Mr. Moruzin has taken on an unwarranted and
paranoid view toward the evaluator, his own attorney, the
prosecutor, and the judge, believing each of these actors has
joined in some plot against him.

Dr. Campbell's diagnostic impressions, using the
formulations of the Diagnostic and Statistical Manual of Mental
Disorders, Fourth Edition, Text Revision (DSM-IV-TR), are:

    Axis I:   296.89 - Bipolar II Disorder,
              Moderate, with Psychotic Features
              304.80 Polysubstance Dependence.

    Axis II:  301.90 Personality Disorder Not
              Otherwise Specified (NOS), with
              Narcissistic, Paranoid, and
              Antisocial Features

(Ex. G-2 at p. 7.)  There is ample support in the record for
these diagnoses, and they are consistent with Mr. Moruzin's
documented mental health history and the observations of the
medical personnel at FMC Lexington.  These mental disorders have
presented themselves in this litigation as symptoms including
extreme irritability, aggressiveness, delusional thinking, and
extreme paranoia regarding essentially every criminal process
participant in the case.  He has blurted out inappropriate
epithets at prior hearings, for which he was admonished, and he
has written threatening communications to AUSA Mitchell
(previously addressed on the record of this case) and to Dr.
Campbell (as reflected in various letters introduced at the
hearing).  Mr. Moruzin continues to suffer from Bipolar II

11

Disorder with Psychotic Features, which is a severe mental
illness.

Dr. Campbell performed a careful evaluation and her opinion
of Mr. Moruzin's lack of mental competence is well supported by
the facts, as applied through her considerable training and
experience in the field.  Her testimony at the hearing, whether
on direct or cross-examination, was clear, consistent, and
convincing.

The vast preponderance of evidence leads to the conclusion
that Mr. Moruzin, due to a severe mental disease, is presently
mentally incompetent because he is unable to properly assist in
his defense.  A clear understanding of the judicial proceedings
is vital to a defendant's ability to assist in his own defense.
Mr. Moruzin's paranoid and delusional thinking, however, impairs
his functioning so severely that his perceptions of this process
are too often irrational.  Although Mr. Moruzin displays moments
of lucidity in court and speaks of various defense tactics, he is
much more often agitated, suspicious, and non-comprehending of
the procedures and the intentions of those around him.  He
presently seems to be unable to have a constructive dialog about
this case or his defense due to his hostility and paranoia, and
there is little doubt that his unfounded mistrust of his attorney
and his attorney's motives hampers his attorney-client
relationship.  Although he initially attempted to represent

himself with this Court's permission, his efforts to do so were self-defeating, confused, and undermining of a fair process.  His written submissions were full of non-sequiturs and accusations of wrongdoing by everyone else in the court proceedings and in his confinement.

It is not a reasonable solution to his problems communicating with and entrusting his counsel to say that he may resume representing himself at this time.  His ability to assist counsel in his defense, let alone to defend himself, is severely compromised by delusional and paranoid thinking and incomprehension of the legal standards and well-settled principles that apply to his case.  As the Second Circuit has written in this same context, proper assistance in the defense requires an understanding that is "rational as well as factual." United States v. Hemsi, 901 F.2d 293, 295 (2d Cir. 1990) (quoting Dusky v. United States, 362 U.S. 402 (1960) (per curiam)).  Mr. Moruzin often displays a thorough knowledge of facts; it is his inability to order these facts and impressions in a rational, sensible, non-paranoid manner that precludes a finding of competency to assist in his defense at the present time.


IV.  CONCLUSION

For the above reasons, this Court has found by a preponderance of the evidence that Defendant Wayne Moruzin is

13

presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to assist properly in his own defense.  No trial can go forward until Mr. Moruzin regains at least a minimal level of mental competence. The Court shall commit Mr. Moruzin to the custody of the Attorney General for hospitalization and treatment in a suitable facility pursuant to 18 U.S.C. § 4241(d).  Unless the director of the facility in which Defendant is hospitalized determines sooner that Defendant has regained his capacity to stand trial, the director shall, within the 120-day period from today's date, as specified in 18 U.S.C. § 4241(d)(1), report to this Court whether there is a substantial probability that in the foreseeable future from that date, he will attain the capacity to permit the trial to proceed.

The accompanying Order is entered.

**October 19, 2006**          **s/ Jerome B. Simandle**
Date                          JEROME B. SIMANDLE
                              U.S. District Judge

14