```
              THE UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF NEW JERSEY
```

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | HON. JEROME B. SIMANDLE |
|  | Criminal No. 05-306 (JBS) |
| v. |  |
|  | **OPINION** |
| WAYNE MORUZIN, |  |
|         Defendant. |  |

APPEARANCES:

CHRISTOPHER J. CHRISTIE
United States Attorney
By:
    Norman J. Gross,
    Assistant United States Attorney
    Ronald Chillemi,
    Assistant United States Attorney
401 Market Street, 4th Floor
Camden, New Jersey  08101

MARK W. CATANZARO, Esquire
Blason IV - Suite 208
Moorestown, NJ 08057
    Attorney for Defendant Wayne Moruzin

**SIMANDLE**, District Judge:

The main issue before the Court is whether the Government may present the testimony of its principal medical witness by live two-way video-conference at a hearing to determine whether the Bureau of Prisons may involuntarily administer antipsychotic medication to attempt to restore the defendant's mental competence to stand trial, or whether such a procedure would violate the defendant's right to cross-examination of witnesses who appear against him.

In its October 19, 2006 Opinion, the Court determined that the defendant, Wayne Moruzin, was suffering from a mental disease or defect that rendered him incompetent to stand trial [Docket Item 91].  United States v. Moruzin, Cr. No. 05-306(JBS), 2006 WL 3000182 (D.N.J. Oct. 19, 2006).  On July 9, 2007, the Government filed a motion requesting permission under Sell v. United States, 539 U.S. 166 (2003), to involuntarily medicate Mr. Moruzin in order to render him competent to stand trial [Docket Item 112].  In Sell, the Supreme Court determined that, in limited circumstances, the Constitution permits the Government to administer antipsychotic drugs involuntarily to a mentally ill criminal defendant in order to render the defendant competent to stand trial for serious crimes.  Id. at 169.  To do so, the government has the burden of proving that the proposed treatment is medically appropriate, is substantially unlikely to have side effects that may undermine the trial's fairness, and, taking account of less intrusive alternatives, is necessary significantly to further important governmental trial-related interests.  Id. at 179.

Presently before the Court is the Government's motion to permit its psychiatric witness, Dr. Robert Lucking, to testify via video-conference from his North Carolina office at the defendant's Sell hearing [Docket Item 124].  The defendant opposes the Government's motion on the ground that testimony via

video-conference would impinge on his constitutional right to confront witnesses against him [Docket Item 125]. For the reasons discussed herein, the Court will permit Dr. Lucking to testify via video-conference at the <u>Sell</u> hearing under procedures protecting Defendant's confrontation right, and thus will grant the Government's motion.

## I.   BACKGROUND

Moruzin was charged with bank robbery on January 5, 2005. Pursuant to the defendant's application to waive his right to counsel and assert his right to represent himself, the Court conducted a hearing and, on October 18, 2005, issued an Order permitting Moruzin to represent himself [Docket Item 40]. Meanwhile, a superseding indictment in October, 2005, added a charge of obstruction of justice by attempted jury tampering. However, once Moruzin began to exhibit unusual behavior, the Court, pursuant to 18 U.S.C. § 4241(a), ordered an evaluation of whether Mr. Moruzin was mentally competent to stand trial. Moruzin was transferred to the Federal Medical Center in Lexington, Kentucky ("FMC Lexington") for this mental health evaluation.

On October 5, 2006, the Court conducted a hearing on the issue of the defendant's mental competence at which the Federal Bureau of Prisons' Forensic Psychologist, Judith Campbell, Ph.D., testified. Based upon Dr. Campbell's testimony, the defendant's

3

mental health diagnosis, and the defendant's behavior and demeanor, the Court determined that Mr. Moruzin was suffering from a mental disease or defect that rendered him mentally incompetent to stand trial, pursuant to 18 U.S.C. § 4241(d) [Docket Item 91].

In its Order dated October 19, 2006, the Court ordered that the defendant be committed to the custody of the Attorney General for hospitalization and treatment and directed the treatment facility to conduct a study regarding the likelihood of whether the defendant would regain his mental competence so as to permit the trial to proceed [Docket Item 92]. The resulting competency restoration study, conducted under Dr. Lucking's supervision at the Federal Medical Center in Butner, North Carolina ("FMC Butner"), produced a detailed forensic evaluation (the "FMC Butner Report"), dated March 13, 2007, finding continued incompetence and recommending that the involuntary administration of antipsychotic medication be prescribed, to be followed by a period for restoration of competence under 18 U.S.C. § 4241(d).

On July 9, 2007, the Government moved for the involuntary medication of Moruzin under Sell v. United States in order to restore his competency to stand trial[1] because Moruzin had

---

[1] In its July 9 Motion, the Government also argued that the Court should order that Moruzin be involuntarily medicated under Washington v. Harper, 494 U.S. 210 (1990), on account of the risk that Moruzin allegedly posed to others. The Government has since withdrawn its argument for involuntary medication pursuant to Harper.

4

refused to be treated voluntarily with psychotropic medication [Docket Item 112].  At the Sell hearing, the Government intends to present the testimony of psychiatrist Dr. Robert Lucking, who examined and treated the defendant at FMC Butner and who supervised the production of the FMC Butner Report on Moruzin's mental competency.  On August 24, 2007, the Government moved that the Court permit Dr. Lucking to testify at the Sell hearing from FMC Butner via video-conference on account of a severe health condition that prevents Dr. Lucking from traveling and inhibits his capacity to testify comfortably in court [Docket Item 124].  On September 5, 2007, the defendant submitted his motion in opposition to the Government's request for testimony by video-conference on the ground that it would violate his constitutional right to confront the witnesses against him [Docket Item 125].

   The Court conducted a hearing on this matter on September 17, 2007.  At the hearing, Dr. Lucking testified telephonically in response to questions regarding his health condition and also on the indispensability of his testimony for the Sell hearing.  With regard to his health condition and his capacity to travel, Dr. Lucking testified in detail to the fact that he has a medical condition that does not permit him to travel and that significantly inhibits his capacity to testify in court.[2]

---

[2] To protect Dr. Lucking's privacy, the specific details of his health condition are summarized in the Appendix to this Opinion, which has been filed under seal and will be furnished to

Dr. Lucking also testified about his familiarity with Moruzin's case and responded to questions regarding whether it would be feasible for another mental health professional at FMC Butner to testify about the defendant's mental health status and the advisability of prescribing antipsychotic medication at the Sell hearing. Dr. Lucking testified that he had met with the defendant on three occasions and that these three meetings amounted to roughly one hour of time. According to Dr. Lucking, no other psychiatrists at FMC Butner had met with the defendant. In addition, Dr. Lucking testified that Moruzin's mental health diagnosis was rendered by Dr. Angela Walden Weaver, Ph.D., and that Dr. Lucking's determination about whether Moruzin should be involuntarily medicated was made as a result of Dr. Walden Weaver's diagnosis and Dr. Lucking's own determination about what medications are available to treat Moruzin's condition.

Dr. Lucking testified that no other mental health professional at FMC Butner who examined Moruzin was qualified to testify about the advisability of involuntarily administering antipsychotic medication in Moruzin's case. Specifically, Dr. Lucking noted that Dr. Walden Weaver would be unable to testify

---

counsel under seal. Dr. Lucking's testimony as to his health was taken upon a sealed record with the participation of defense counsel and prosecutor, who each had the opportunity to ask questions, but outside the presence of the defendant himself, again in respect to the witness's privacy concerning personal medical history.

in lieu of Dr. Lucking on the issue of whether to prescribe psychotropic medication against Moruzin's will because she is not a medical doctor and, as such, is unable to prescribe medication. Dr. Lucking also stated that it might be unethical for another psychiatrist at FMC Butner who had not worked with Moruzin until this point to testify at Moruzin's hearing, and that Dr. Lucking's supervisor was strongly opposed to such a proposal.

**II.   DISCUSSION**

In its motion requesting that Dr. Lucking be permitted to testify by video-conference, the Government's argument is twofold.  The Government first argues that the defendant's Sixth Amendment right to confront the witnesses against him does not inhere in the pretrial context of a <u>Sell</u> hearing, which is not a criminal trial.  Second, according to the Government, while the defendant does have a due process right to cross-examine witnesses in a pretrial hearing, permitting Dr. Lucking to testify via video-conference would not infringe upon this right. Moruzin disputes both of these lines of reasoning, arguing that the proposed video-conference testimony would violate his rights under both the Sixth Amendment's Confrontation Clause and the Fifth Amendment's Due Process Clause, and that the logistics of a two-way video conference for Dr. Lucking's testimony from his North Carolina office would make effective cross-examination impossible.

7

### A. Sixth Amendment

The Confrontation Clause of the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. In the trial context, the Supreme Court has recognized that "face-to-face confrontation forms the core of the values furthered by the Confrontation Clause."[3] Maryland v. Craig, 497 U.S. 836, 847 (1990) (internal quotations and citations omitted). However, the Court has also made clear that "the right to confrontation is a *trial* right." Pennsylvania v. Ritchie, 480 U.S. 39, 52 (1987) (plurality opinion) (emphasis in original); see also Barber v. Page, 390 U.S. 719, 725 (1968). Consistent with the trial-oriented character of the Confrontation Clause, courts have repeatedly declined to hold that the Sixth Amendment right to confrontation extends to various pretrial contexts. See United States v. Matlock, 415 U.S. 164, 174-75 (1974) (noting the inapplicability of the defendant's confrontation rights to a suppression hearing); cf. United States v. Salerno, 481 U.S. 739, 751 (1987) (assessing the statutory confrontation rights of detainees at Bail Reform Act detention proceedings under the Fifth Amendment's due process clause

---

[3] Even in the context of a trial, however, the Court has held that the right to face-to-face confrontation is "not absolute" and may yield where an "important public policy" so requires. Craig, 497 U.S. at 850.

without indicating that the Sixth Amendment is implicated); United States v. Sanchez, 988 F.2d 1384, 1392 (5th Cir. 1993) ("The right to confront does not extend to non-trial, in camera settings."). At a pretrial detention hearing, the rules of evidence that govern criminal trials do not apply to information considered at the hearing, and the right of cross-examination extends only toward witnesses who appear at the hearing, pursuant to 18 U.S.C. § 3142(f); the overall scheme of the Bail Reform Act was found to be regulatory rather than punitive in Salerno, 481 U.S. at 747, and the liberty interest at stake was not subjected to the same protections as in a criminal trial.

Likewise, a Sell hearing, while arising in a criminal context, is not a trial. Its purpose is not to determine innocence, guilt, or punishment, but rather to determine whether the serious step of involuntary medication should be undertaken to treat a mentally incompetent felony defendant with a goal of restoring competence to assist in defense and stand trial. Although the consequences of a Sell hearing upon the deprivation of a defendant's liberty interest in avoiding unwanted medication may be great, and care must be taken to avoid an erroneous deprivation, the Sell hearing is functionally similar to a pretrial detention hearing in addressing the defendant's liberty interest.

Indeed, the Court is aware of no case extending the Confrontation Clause to a <u>Sell</u> hearing.  The few cases that addressed similar questions have held the Sixth Amendment inapplicable in the <u>Sell</u> hearing context or declined to rule on the issue.  See <u>United States v. Hamilton</u>, 107 F.3d 499, 506 (7th Cir. 1997), <u>United States v. Algere</u>, 457 F. Supp. 2d 695, 700 (E.D.La. 2005) (finding that "[i]t is unclear to what extent the Sixth Amendment right to confront witnesses applies to . . . [<u>Sell</u>] hearings," but concluding that testimony by video-conference would not violate the Confrontation Clause even if it were applicable).

In view of the consistent characterization of the Sixth Amendment right to confrontation as a trial right and the absence of any authority to the contrary in the context of a <u>Sell</u> hearing, the Court concludes that Moruzin's Sixth Amendment rights would not be implicated by permitting Dr. Lucking to testify by video-conference at the <u>Sell</u> hearing.

    **B.**    **Due Process**

Although the Sixth Amendment's Confrontation Clause does not extend to the <u>Sell</u> hearing context, Moruzin is nonetheless entitled to due process in a meaningful manner under the Fifth Amendment.  Mr. Moruzin cannot be deprived of his liberty without due process of law.  This right to due process may include the right of the defendant to cross-examine the Government's

10

witnesses at the Sell hearing.  Cf. Vitek v. Jones, 445 U.S. 480, 494-95 (1980) (determining that a prison inmate facing the prospect of being transferred to a mental hospital had a due process right "to confront and cross-examine witnesses called by the state, except upon a finding, not arbitrarily made, of good cause for not permitting such . . . confrontation, or cross-examination").  However, because the process that a defendant is due at a preliminary hearing "may be less demanding and elaborate than the protections accorded the defendant at the trial itself," United States v. Raddatz, 447 U.S. 667, 679 (1980), the due process standard permits greater flexibility in the right to cross-examination than does the Sixth Amendment's provision for confrontation at trial.

In evaluating whether permitting Dr. Lucking to testify via video-conference at the Sell hearing comports with due process, the Court looks to three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Wilkinson v. Austin, 545 U.S. 209, 224-25 (2005) (quoting Mathews v. Eldridge, 424 U.S. 319, 335 (1976)).  With respect to the

first factor - the individual interest at stake - the Supreme Court in Sell itself reiterated that "an individual has a significant constitutionally protected liberty interest in avoiding the unwanted administration of antipsychotic drugs." Sell, 539 U.S. at 178 (internal quotations and citations omitted).  In view of the seriousness of administering medication against the defendant's will, the Court recognizes that Moruzin has a significant liberty interest at stake in the Sell hearing.

Under the second prong of the due process inquiry, the Court evaluates the risk of whether the procedures in question could result in the erroneous deprivation of the defendant's liberty interest.  Mathews, 424 U.S. at 335.  Without diminishing the importance of the defendant's interest in face-to-face confrontation, the Court finds that there is little risk that permitting Dr. Lucking to testify via video-conference will result in the erroneous deprivation of Moruzin's liberty interest.  The Court first notes that the video-conferencing equipment will enable the Court, the Government, and the defendant to "see, hear, and speak to" Dr. Lucking in real time, and vice versa, thereby allowing the Court to assess the witness's demeanor in addition to evaluating the substance of his testimony.  United States v. Burke, 345 F.3d 416, 425 (6th Cir. 2003) (determining that "[t]hough presence through a television is not the same thing as direct physical presence, in this case

the difference between the two was not of constitutional dimension"). Dr. Lucking would testify from a video conference facility at FMC Butner, North Carolina, and the defendant, his attorney, the prosecution and the undersigned would all be present in court, all in complete two-way communication with the witness upon the record.

   Moreover, Dr. Lucking's testimony, while obviously important to a determination of the issue of involuntary medication, will not be the only medical evidence in the case.  The FMC Butner Report already outlines the bases for Dr. Lucking's and Dr. Walden Weaver's opinions.  Mr. Moruzin's full medical records from his time in the Bureau of Prisons (including not only FMC Butner but also FMC Lexington and FDC Philadelphia) have been supplied to the defense, other witnesses may be called by either side, and the defendant has the opportunity to call his own forensic psychiatrist, all of whom would be testifying in court in the normal fashion.  Further, unlike an eyewitness, for example, seeking to recount historical facts to a jury regarding a defendant's conduct or identity, for which the crucible of cross-examination is especially valuable to ascertain the truth, Dr. Lucking will be testifying to his medical opinions based upon the medical record, in which cross-examination of the expert does not typically contain the same urgency of confrontation.

13

At oral argument, counsel for the defendant raised concerns about the impact that the use of video-conferencing would have on the defendant's opportunity for spontaneity in his cross-examination.  Specifically, defendant's counsel reasoned that he would need to commit in advance to the documents he intended to present to Dr. Lucking during the cross-examination in order to mail them to FMC Butner for Dr. Lucking to have during the hearing, and that this would limit the fluidity and spontaneity of his cross-examination.  According to the defendant, the diminished opportunity for spontaneous cross-examination that the video-conference procedure imposes would unacceptably heighten the risk that Moruzin's liberty interest would be erroneously deprived.

Although mindful of the defendant's concerns, the Court finds that the risk of erroneous deprivation that the defendant identifies can be minimized with minor adjustments in the structure of Dr. Lucking's video-conference testimony.  For example, the Court can bifurcate Dr. Lucking's testimony at the <u>Sell</u> hearing, taking a recess for a reasonable period after the Government's direct examination of Dr. Lucking and resuming to conduct the defendant's cross-examination when defense counsel is prepared to do so[4], which would permit Moruzin's counsel to

---

[4] For example, the hearing could recess for a few hours, or even adjourn for a few days if requested, so that defense counsel can gather and transmit to FMC Butner any documents needed for

14

respond to the matters raised in direct testimony without having to commit in advance to the documents he presents to Dr. Lucking during cross-examination. Additionally, should it become necessary, "any additional exhibits . . . could easily [be]. . . exchanged . . . by means of facsimile transmission" during the cross-examination itself. United States v. Baker, 836 F. Supp. 1237, 1239 n.5 (E.D.N.C. 1993), aff'd, 45 F.3d 837 (4th Cir. 1995). In view of the minor structural accommodations that the Court can employ to address the risks the defendant identified, the Court finds that the proposed use of video-conferencing during the Sell hearing carries minimal risk that Moruzin's liberty interest will be erroneously deprived.

   Under the final prong of the due process test, the Court looks to the governmental interest served by employing the procedure in question. Mathews, 424 U.S. at 335. The Court finds that the Government has a substantial interest in having Dr. Lucking testify via video-conference at the hearing. At the September 17, 2007 hearing, Dr. Lucking testified persuasively and in detail about a health condition that prevents him from traveling and that restricts his ability to testify in court, as

---

Dr. Lucking's cross-examination, upon the understanding that such documents not be revealed to Dr. Lucking until counsel so directs during cross-examination. This procedure preserves the element of confrontation present in the courtroom setting, with the added advantage of giving more time for counsel to prepare cross-examination than normally occurs in the courtroom.

summarized in the sealed Appendix to this Opinion.  It is clear from this testimony that Dr. Lucking's condition does not permit him to travel from his North Carolina office to this courthouse in New Jersey by any means of public transportation or private conveyance.

In addition to testifying about his medical condition, Dr. Lucking testified that no other mental health professional at FMC Butner would be qualified to testify at Moruzin's Sell hearing as to whether the involuntary administration of antipsychotic medication should be prescribed.  As discussed above, he was the only psychiatrist at the facility to have met with Moruzin, he supervised the production of the FMC Butner Report on Moruzin recommending the administration of antipsychotic drugs, and he is the only member of Moruzin's treatment team with the training, authority, and legal license to prescribe and administer antipsychotic medication.

In light of this testimony regarding the importance of Dr. Lucking's testimony, which the Court credits, the Court agrees with the Government that he is an essential witness for Moruzin's Sell hearing.  The Court further notes that the Government has an important interest in the outcome of the Sell hearing itself, since the Government seeks to hasten the day when Mr. Moruzin's guilt or innocence on charges of bank robbery and jury tampering can be tried before a jury.  Sell, 539 U.S. at 180 ("The

Government's interest in bringing to trial an individual accused of a serious crime is important."). Given that Dr. Lucking's health condition clearly does not permit him to travel to this Court and given the importance of his testimony, the Court finds that the Government has a substantial interest in having Dr. Lucking testify via video-conference at the hearing. This presents an extraordinary situation where video-conference testimony at this non-trial hearing is justified.

The balance of these factors leads the Court to conclude that permitting Dr. Lucking to testify by video-conference would not violate Moruzin's due process rights. While the use of the video-conference procedure at the hearing implicates substantial interests for both Moruzin and the Government, the minimal risk that Moruzin's interest in robust cross-examination would be compromised as a result of the procedure leads inevitably to the conclusion that the use of video-conference to permit Dr. Lucking's testimony at the Sell hearing does not run afoul of the defendant's due process rights.

### III. CONCLUSION

For the foregoing reasons, and also for the reasons stated in the Appendix to this Opinion (filed herewith under seal), the Court will grant the Government's motion to permit Dr. Lucking to

testify via video-conference at the defendant's <u>Sell</u> hearing.

The accompanying Order is entered.


**October 1, 2007**            **s/ Jerome B. Simandle**
Date                           JEROME B. SIMANDLE
                               United States District Judge