IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | HON. JEROME B. SIMANDLE |
| v. | Criminal No. 05-306 (JBS) |
| WAYNE MORUZIN, | **OPINION** |
| Defendant. | |

APPEARANCES:

Paul J. Fishman
United States Attorney
By:  Norman J. Gross,
     Assistant United States Attorney
     Ronald Chillemi,
     Assistant United States Attorney
401 Market Street, 4th Floor
Camden, New Jersey  08101

Mark W. Catanzaro, Esq.
Blason IV - Suite 208
513 S. Lenola Road
Moorestown, NJ 08057
     Attorney for Defendant Wayne Moruzin

**SIMANDLE**, District Judge:

## I.  INTRODUCTION

This Court previously found Defendant Wayne Moruzin to be suffering from a severe mental disease or defect that rendered him mentally incompetent to stand trial on charges of bank robbery and jury tampering.  United States v. Moruzin, Cr. No. 05-306, 2006 WL 3000182 (D.N.J. Oct. 19, 2006).  Since that time, he has remained in the custody of the Attorney General for hospitalization and treatment.  On December 18, 2009, upon a

joint motion of the United States and Mr. Moruzin indicating that Mr. Moruzin may have regained competency, the Court ordered a new competency evaluation.  The evaluation having now been completed and a competency hearing held pursuant to 18 U.S.C. § 4241, the United States moves for an order finding Mr. Moruzin to be competent to stand trial [Docket Item 216].  Mr. Moruzin was initially opposed to a finding of competency prior to the submission of the most recent forensic report, but his latest position, represented in a letter from his counsel of May 12, 2010, is that he is competent to proceed [Docket Item 219].  For the reasons that follow, the Court finds that Mr. Moruzin has intentionally feigned many of his symptoms of incompetency, that he has admitted his contrivances to at least three mental health professionals during the course of this latest evaluation, that he has further lied to one prison psychologist in April, 2010 when he claimed he was recently faking his competency, and that he is indeed competent to stand trial on his pending criminal charges.

## II.  BACKGROUND

Mr. Moruzin faces charges of bank robbery and jury tampering [Docket Item 41].  The Court initially permitted him to proceed without counsel [Docket Item 40], but after he began to exhibit increasingly unusual and disruptive behavior, the Court

2

determined that there was "reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent," under 18 U.S.C. § 4241(a).  Consequently, the Court ordered an evaluation of Mr. Moruzin's competency and restored his appointed counsel, Mark W. Catanzaro, Esquire [Docket Items 76 and 81].

### A.   Campbell Report

The first competency evaluation was performed by Dr. Judith (Betsy) Campbell, Ph.D., a Bureau of Prisons forensic psychologist.  Dr. Campbell examined Mr. Moruzin during June and July of 2006 at the Federal Medical Center in Lexington, Kentucky.  She reviewed Mr. Moruzin's medical history, performed some testing, and personally interviewed him.  (Forensic Report of August 7, 2006 ("Campbell Report") Ex. G-2 in October 5, 2006 Hr'g., 1-2.)  Dr. Campbell documented her findings in a forensic report, dated August 7, 2006.

Dr. Campbell's testing and experience with Mr. Moruzin led her to conclude that Mr. Moruzin was not competent to stand trial.  The tests Dr. Campbell performed included the Wechsler Adult Intelligence Scale III and the Minnesota Multiphasic Personality Inventory - Second Edition.  (Campbell Report 2.) Dr. Campbell found that Mr. Moruzin's responses to the latter test were "extremely exaggerated and inconsistent . . . endorsing

a wide variety of symptoms and attitudes," suggesting he is experiencing "severe psychological deterioration or psychosis." (Campbell Report 6.)  Additionally, Mr. Moruzin's attitude toward Dr. Campbell and his counsel was irrationally distrustful and paranoid.  (Campbell Report 8-9.)  Because of Mr. Moruzin's refusal to fully cooperate with the evaluation, Dr. Campbell had only 2 to 2 1/2 hours to evaluate Mr. Moruzin in person, whereas Dr. Campbell generally spends between 8 and 10 hours on in-person evaluation.  United States v. Moruzin, Cr. No. 05-306, 2006 WL 3000182, at *10 n.3 (D.N.J. Oct. 19, 2006).

Dr. Campbell diagnosed Mr. Moruzin with moderate Bipolar II disorder with psychotic features, polysubstance dependence, and Personality Disorder Not Otherwise Specified with narcissistic, paranoid, and antisocial features.  (Campbell Report 7.)  Her initial conclusion was that Mr. Moruzin could not understand the nature and consequences of the proceedings against him nor assist properly in his defense because of these conditions.  (Campbell Report 10.)

The Court convened a competency hearing on October 5, 2006. Mr. Moruzin attended and declined to testify at the hearing.  At the competency hearing, Dr. Campbell revised her conclusions somewhat, concluding that Mr. Moruzin was able to understand the nature and consequences of the proceedings, but nonetheless remained incompetent because he was unable to assist properly in

his defense, largely due to the irrational paranoia he exhibited toward his attorney.  United States v. Moruzin, Cr. No. 05-306, 2006 WL 3000182, at *10 (D.N.J. Oct. 19, 2006).

Having reviewed the evidence, this Court found that Mr. Moruzin's paranoia and delusional thinking impaired his functioning so severely that he was unable to have a constructive dialog about the case or his defense, hampering his attorney-client relationship and also preventing him from adequately representing himself.  Id. at 12.  The Court based its conclusion on the testimony of Dr. Campbell, as well as the Court's own observation of Mr. Moruzin's extreme irritability, aggressiveness, delusional thinking, and extreme paranoia, including outbursts during hearings and belligerent communications to various individuals involved in the case.  Id. at 11-12.

Accordingly, on October 19, 2006, this Court ordered that Mr. Moruzin be committed to the custody of the Attorney General for hospitalization and treatment in a suitable facility pursuant to 18 U.S.C. § 4241(d). [Docket Item 92.]  Pursuant to the Court's Order, Mr. Moruzin was transferred to the Federal Medical Center in Butner, North Carolina for treatment.

### B.  Butner Report

In the October 19, 2006 Order, the Court required that the

5

director of the treatment facility was to report to the Court
whether there was a substantial probability that, in the
foreseeable future from that date, Defendant would attain the
capacity to permit the trial to proceed, as required by 18 U.S.C.
§ 4241(d)(1).  [Docket Item 92.]  Defendant was evaluated by
members of the Butner mental health staff, including Dr. Angela
Walden-Weaver, Ph.D., who served as his treating psychologist,
and Dr. Robert Lucking, M.D., who served as a consulting
psychiatrist.  Drs. Walden-Weaver and Lucking subsequently
produced a forensic evaluation on March 13, 2007 addressing Mr.
Moruzin's psychological diagnosis, his competency to stand trial,
and the prospects for Mr. Moruzin to attain competency with or
without the assistance of medication.  (Forensic Evaluation of
March 13, 2007 ("Butner Report") Ex. B to United States' Mot. for
Medical Treatment of July 9, 2007 [Docket Item 112].)

    In the Butner Report, Drs. Walden-Weaver and Lucking
diagnosed Mr. Moruzin with severe Bipolar II disorder with
psychotic features, polysubstance dependence, and calculated his
Global Assessment of Functioning to be 41.  (Butner Report 9.)
The Report indicated that Mr. Moruzin suffered from mental
illness "[f]or at least the past 32 years," and that his
"psychotic symptoms are chronic and persistent."  (Butner Report
9, 14.)  On the matter of Mr. Moruzin's competency, Drs. Walden-
Weaver and Lucking, like Dr. Campbell, opined that Mr. Moruzin

was unable to assist in his defense on account of his delusional belief that his attorney, the Government, and the Court were conspiring against him.  (Butner Report 11.)

The Butner Report indicated that Mr. Moruzin may be able to regain competency with treatment with anti-psychotic medication, which Mr. Moruzin was unwilling to ingest.  After a further hearing including testimony of Drs. Lucking and Walden-Weaver, the Court denied the Government's request, pursuant to Sell v. United States, 539 U.S. 166 (2003), to involuntarily administer these drugs for the reasons explained in the Opinion of October 30, 2008, namely that the Government failed to prove that the proposed treatment was medically appropriate, substantially unlikely to have side effects that may undermine the fairness of the trial, and, taking account of less intrusive alternatives, necessary significantly to further important governmental trial-related interests.  United States v. Moruzin, 583 F. Supp. 2d 535, 552 (D.N.J. 2008).[1]  Upon denial of the Government's

---

[1]  It is, of course, one of the ironies of this case that defense counsel Mark Catanzaro, against whom Mr. Moruzin exhibited prolonged insulting behavior, performed with brilliance on Moruzin's behalf in defeating the Government's motion for involuntary administration of anti-psychotic medication.  More ironic, perhaps, is the fact that the psychosis which the medication was to address — consuming about a year of evaluation and procedural protections for Mr. Moruzin — was largely manufactured by Moruzin himself, as explained below.  The cherished rights of defendant's bodily integrity, so assiduously observed by the Court and counsel in the Sell hearing process, were in hindsight protecting Mr. Moruzin's fakery and manipulation of this Court and its processes.

7

motion to administer involuntary anti-psychotic medication, the
Court remanded Mr. Moruzin to the custody of the Attorney General
pending initiation of civil commitment proceedings.

**C.  Present Motion**

In the latter part of 2009, Mr. Moruzin was observed to show
a calmer, more rational and cooperative demeanor.  On December
18, 2009, upon joint motion of the parties, this Court ordered
that the Bureau of Prisons conduct a new evaluation of Mr.
Moruzin to assess his present competency to proceed in this case.
[Docket Item 202.]  Pursuant to that order, Dr. Tanya Cunic,
Psy.D., a Forensic Psychologist at the Bureau of Prisons
Correctional Institution at Butner, North Carolina, conducted an
evaluation during January and February of 2010.  On March 1,
2010, Dr. Cunic completed the report of her evaluation, and
submitted it to the Court and to the parties.  (Forensic Report
of March 1, 2010 ("Cunic Report") Ex. 2 in April 27, 2010 Hr'g.)
On April 27, 2010, the Court convened a competency hearing.  The
factual findings explained below are the result of the report and
hearing.

**III.  DISCUSSION**

**A.  Governing Law**

The test for mental competency is whether the defendant "has

sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding, and whether he has a rational as well as factual understanding of the proceedings against him."  Dusky v. United States, 362 U.S. 402, 402 (1960); see also 18 U.S.C. § 4241(d).

In order to determine whether these conditions have been met, the district court must follow a process set forth in 18 U.S.C. § 4241.  See United States v. Haywood, 155 F.3d 674, 680 (3d Cir. 1998).  The procedure involves the finding of reasonable cause to believe the defendant might be incompetent, performance of an examination, and convening of a competency hearing in accordance with the procedures required by the statute.[2]  § 4241(a)-(d).

After following the procedures outlined in § 4241, the Court must look at the unique circumstances of the case and decide whether, by the preponderance of the evidence, the defendant is presently suffering from a mental disease or defect, and if so, whether it prevents the defendant from assisting in his own

---

[2]  Under Section 4247(d):
At a hearing ordered pursuant to this chapter the person whose mental condition is the subject of the hearing shall be represented by counsel . . . .  The person shall be afforded the opportunity to testify, to present evidence, to subpoena witnesses on his behalf, and to confront and cross-examine witnesses who appear at the hearing.

18 U.S.C. § 4247(d).

defense or comprehending the nature and possible consequences of trial.  United States v. Leggett, 162 F.3d 237, 242 (3d Cir. 1998) (quoting Drope v. Missouri, 420 U.S. 162, 171 (1975)); see also United States v. Stanford, 69 Fed. App'x 518, 521 (3d Cir. 2003).  In this federal criminal prosecution, the United States bears the burden of proving competency.  See United States v. Velasquez, 885 F.2d 1076, 1089 (3d Cir. 1989).

In determining whether the defendant is competent, the Court may consider the defendant's behavior and demeanor in the courtroom in addition to any expert opinion on competency.  Drope v. Missouri, 420 U.S. 162, 180 (1975).  See Leggett, 162 F.3d at 244.  And a Court need only assess the defendant's ability to understand and assist with the proceedings, and need not determine whether the defendant will act in conformity with such understanding and ability.  Bell v. Evatt, 72 F.3d 421, 432 (4th Cir. 1995).[3]

## B.  Factual Findings

---

[3]  The standard for determining whether the accused is competent to stand trial is different from the standard for determining whether the accused is mentally competent to represent himself, as explained in Indiana v. Edwards, 128 S.Ct. 2379, 2388 (2008) ("[T]he Constitution permits States to insist upon representation by counsel for those competent enough to stand trial under Dusky but who still suffer from severe mental illness to the point where they are not competent to conduct trial proceedings by themselves.").  The issue of Mr. Moruzin's competency to represent himself is not before the Court at this time and the Court expresses no opinion on that separate matter.

Applying this law to the circumstances of this case, this Court finds as follows:

Dr. Cunic is an expert in the field of evaluating mental competency of defendants, having performed over five hundred such evaluations and having testified in numerous federal and state courts.  Dr. Cunic concluded that Mr. Moruzin's competency is not presently impaired by any serious mental illnesses, and that he is likely to remain competent for the foreseeable future.  (Cunic Report 11.)  She based this conclusion on diagnostic testing, prolonged evaluation and routine observation over weeks of time, and with the aid of all previous forensic evaluations as well as a subject who was more compliant than in the past.  Overall, Dr. Cunic's comprehensive Report was based on her review of 47 listed items in the record (April 27, 2010 Hr'g Tr. 14:10-18), including such items as transcripts of about twenty telephone conversations in which Mr. Moruzin participated (April 27, 2010 Hr'g Tr. 14:24-15:7).  Mr. Moruzin produced no contradictory evidence at the competency hearing, elected not to testify,  (April 27 Hr'g Tr. 80:7-10), and having reviewed Dr. Cunic's report, no longer challenges a finding that he is competent to proceed.  [Post-hearing letter from Mark Catanzaro, Docket Item 219.]

Both the objective testing of Mr. Moruzin's mental status and Dr. Cunic's subjective observations of Mr. Moruzin led her to conclude that Mr. Moruzin did not suffer from any severe mental

disease or defect at present.  Mr. Moruzin scored in the minimal
or no impairment range on all dimensions of the McArthur
Competence Assessment Tool.  (Cunic Report 10.)  And a
Personality Inventory Assessment showed that Mr. Moruzin did not
"display any significant mental health problems." (April 27 Hr'g
Tr. 24:19-25:8.)  Mr. Moruzin was cooperative and compliant
during both his formal interviews and informal interactions with
Dr. Cunic.  (April 27 Hr'g Tr. at 12:17-13:5.)  He understood his
legal case, his defense, and the potential consequences of
different legal options. (Cunic Report 6.)  Although he was
distressed about his pending legal proceedings, his mental status
as a whole was within normal limits.  (April 27 Hr'g Tr.
23:13-24:15.)  Importantly, Dr. Cunic observed that Mr. Moruzin
was able to control his behavior over a period of time in a way
that was inconsistent with severe mental disease.  (April 27 Hr'g
Tr. 40:5-41:17.)

        Dr. Cunic's observations are also consistent with Dr.
Walden-Weaver's follow-up observations in July 2009, when she
observed that Mr. Moruzin was not exhibiting the previous signs
and symptoms of severe mental disorder, such as hallucinations,
abnormal mood changes, excessive anxiety, or severe depression.
(April 27 Hr'g Tr. 33:9-34:23; United States Ex. 9.)

        Dr. Cunic diagnosed Mr. Moruzin as follows:

        Axis I:   Mood Disorder, Not Otherwise Specified
                  Polysubstance Dependence, In a Controlled

Environment

Axis II:  Antisocial Personality Disorder

Axis III:  Hepatitis C; Lumbago; Neuropathy

Axis IV:  Interactions with the legal system

Axis V:  [Global Assessment of Functioning]: 70 (current)

(Cunic Report 10.)  Dr. Cunic testified that she diagnosed Mr. Moruzin with Mood Disorder rather than Bipolar II disorder (his previous diagnosis), because Bipolar disorder requires unstable moods not caused by outside factors.  (April 27 Hr'g Tr. 26:1-15.)  Mr. Moruzin displayed normal moods during the course of his evaluation and immediately previous incarceration, and to the extent his mood was disrupted, Dr. Cunic believed that it could be explained by the external stress of his incarceration and legal proceedings.  (Id.)  Mr. Moruzin also admitted to Dr. Cunic that he had sporadically abused illegal drugs while he was an inmate in the New Jersey state penal system.  According to Dr. Cunic, the abuse and withdrawal process can mimic a cyclical mood disorder, perhaps explaining the symptoms documented during that period.  (April 27 Hr'g Tr. 22:18-23:12.)

Critically, Mr. Moruzin told Dr. Cunic and at least three other health professionals that he had deliberately engaged in the delusional behavior preceding his prior forensic evaluations in order to be found incompetent.  (April 27 Hr'g Tr. 18:24-19:12; Bureau of Prisons Report of April 16, 2010 ("Boardman

13

Report") Ex. 5 in April 27, 2010 Hr'g; Bureau of Prisons Report
of April 15, 2010 ("Daniels Report") Ex. 6 in April 27, 2010
Hr'g; Bureau of Prisons Report of January 15, 2010 ("Ross
Report") Ex. 8 in April 27, 2010 Hr'g.)  Mr. Moruzin told Dr.
Cunic that he had researched behaviors that he could display in
order to be found incompetent, including pretending to believe
his evaluators were part of a government conspiracy, extracting
and writing in his own blood, and smearing his feces.  (April 27
Hr'g Tr. 19:4-22.)  He then did each of these things — and more —
to fake psychotic symptoms in the 2006-2008 period.  Mr. Moruzin
told Dr. Cunic that because of this orchestration he now had an
"insurance policy," since he would be able to challenge a finding
of competency at any time by pointing to the previous forensic
examinations, allowing him to control his position with respect
to a plea bargain.  (April 27 Hr'g Tr. 20:20-21:4.)

Dr. Cunic testified that Mr. Moruzin made these admissions
of faking symptoms of incompetency in formal interviews, informal
interactions, and even to the intake psychologist at the Butner
facility, informing the psychologist, Heather Ross, that he had
been feigning symptoms of a serious mental illness.  (April 27
Hr'g Tr. 21:12-23; Ross Report.)  His demeanor, according to Dr.
Cunic, "was arrogant.  He was proud of himself.  He felt as if .
. . he had orchestrated a perfect position for him to be in.  And
at times I would say he was relatively boastful."  (April 27 Hr'g

14

Tr. 22:1-3.)

Other professionals also noted Mr. Moruzin's boasts about feigning serious mental illness.  He volunteered to Dr. Beth Daniels, in an interview on April 15, 2010, at the facility in Philadelphia, that he was "never crazy," and that his disruptive behavior was an attempt to appear crazy because it was "the only defense I had" (Daniels Report (quoting Mr. Moruzin)).

In an April 22, 2010 report written while Mr. Moruzin was being held in Philadelphia prior to the April 27 hearing in Camden, Dr. Boardman indicated that Mr. Moruzin was by that point claiming he had faked his competency to Dr. Cunic so that he could enter a plea deal.  (April 27 Hr'g Tr. 29:2-16; Bureau of Prisons Report of April 22, 2010 Ex. 4 in April 27, 2010 Hr'g.)[4]

---

[4]  Recent correspondence from Mr. Moruzin echoes the idea that he wanted to be found competent in order to be eligible for a plea deal, which supports the conclusion that Mr. Moruzin understands these proceedings, and is engaging in deliberate tactics as part of an overall strategy rather than as a result of some mental disease or defect.  The Court received a letter on April 29, 2010 from Mr. Moruzin, who wrote, "Did I say what she claimed?  Yes for the most part.  I had to be found competent in order for you to accept my plea, and to fulfill my agreement with the government."  [Docket Item 217.]  On May 23, 2010, Mr. Moruzin sent a letter to AUSA Gross stating that "the moment I'm adjudged as competent, I'm filing for the pro se status reinstated," and threatening a number of other motions as well as "another surprise for you to deal with."  [Docket Item 220.]  On May 24, 2010, Mr. Moruzin sent a letter to this Court that included a letter sent to his counsel indicating his objections to an offer made by AUSA Gross in which he refuses to "testify to tricking anyone except Dr. Cunic in order to be found competent," because such an admission "would be suicide."  [Docket Item 221.]  On July 1, 2010, he wrote to the Court ex parte to complain about experiences in custody and to indicate his objection to the April

At the April 27 hearing, Dr. Cunic addressed the possibility that
Mr. Moruzin was merely lying to her and others about previously
feigning incompetence because he wanted to be found competent
this time.  She testified that, unlike feigning symptoms of
severe mental disease, it is very difficult to feign the lack of
severe mental disease, since this requires consistently stable
behavior that would be difficult or impossible for a severely
mentally ill individual to engage in.  (April 27 Hr'g Tr. 56:14-
57:2.)[5]

The Court credits Dr. Cunic's testimony fully and hereby
finds that Mr. Moruzin would be unable to fake competency during
these prolonged observations, and that he lied to Dr. Boardman on
April 22, 2010 when he told her that he had pretended to be
competent while undergoing the most recent evaluation at the
Butner facility.  Without doubt, this Court concludes that Mr.
Moruzin sought to manipulate and undermine the court-ordered
evaluations of his mental status and competency to stand trial
when he believed it served his purposes to be declared

_____

27 proceedings, arguing that he only agreed to reevaluation upon
the condition that if found competent he would get a plea
bargain.  [Docket Item 222.]

    [5]   Even if it were possible to strategically feign stable
moods when one has a severe mood disorder, at most such behavior
would undermine conclusions about Mr. Moruzin's psychological
diagnosis while bolstering a finding of legal competency; such
tactics suggests that despite any mental problems, the defendant
has an understanding of the proceedings and is attempting to game
them.

incompetent.

In addition to casting doubt on the cause of Mr. Moruzin's previous extreme behavior, Mr. Moruzin's admissions that he was malingering also places some of the other evidence supporting the prior finding of incompetence in a new light. The obstruction of his initial evaluation by Dr. Campbell seemed at the time to be a symptom of his paranoia or delusions, but it appears in hindsight to have been an effort to prevent an accurate evaluation. Similarly, Dr. Campbell's evaluation found Mr. Moruzin's test responses to be "extremely exaggerated and inconsistent . . . endorsing a wide variety of symptoms and attitudes," (Campbell Report 6), which may now be seen as evidence of his previous malingering rather than an endorsement of the severity of his condition (April 27 Hr'g Tr. 72:4-12).[6] And the Butner report contains concerns about the possibility that Mr. Moruzin was exaggerating his symptoms, though at the time the evaluating

---

[6] The Court is not finding that the previous test results are properly interpreted as evidence of malingering, as opposed to evidence of a severe mental disorder existing at the time, as Dr. Campbell had previously interpreted them. Dr. Cunic testified that such results are consistent with either interpretation, (April 27 Hr'g Tr. 72:4-12), and Dr. Cunic was not called upon to determine whether Mr. Moruzin was competent during the period in which he was previously found incompetent. But the fact that the results are subject to either interpretation means that these previous results are at least consistent with the finding that Mr. Moruzin was faking his symptoms. Undeniably, Mr. Moruzin attempted to undermine the earlier evaluations by pretending to be more disturbed than he was.

professionals did not think this invalidated their findings.
(Butner Report 8.)

Based on the foregoing findings, especially Dr. Cunic's
testimony that individuals with severe bipolar disorders cannot
control their behavior in the way Mr. Moruzin did at Butner,
(April 27 Hr'g Tr. 40:12-41:4), the Court finds that Mr. Moruzin
was feigning many of his most severe prior symptoms in order to
be found incompetent.  Dr. Cunic did not determine, and the Court
need not decide, whether the results of Dr. Cunic's evaluation
differ from the previous diagnoses because of Mr. Moruzin's
attempt to mislead previous evaluators, as a result of Mr.
Moruzin's fluctuating mental status, or both, as the question
before the Court is simply whether the evidence shows that he is
presently competent to proceed.

As to Mr. Moruzin's present competency, the Court finds that
Dr. Cunic's well-supported and comprehensive opinion shows by a
clear preponderance of the evidence that Mr. Moruzin presently
understands the consequences of the proceedings and is able to
assist his counsel.  The Court no longer believes that Mr.
Moruzin's paranoia and delusions prevent him from adequately
assisting his counsel in preparing his defense, because Mr.
Moruzin has demonstrated stable moods, cooperation, and lack of
paranoia, and because his prior behavior was, in large part,

18

exaggerated or wholly manufactured.[7]


## IV.  CONCLUSION

The overwhelming and uncontradicted evidence shows that Mr. Moruzin is presently able to understand the nature and consequences of the proceedings against him and to assist properly in his defense.  Therefore, he is competent to proceed to trial under 18 U.S.C. § 4241.  Whether he chooses to assist his counsel, or chooses to engage in further tactics designed to disrupt the proceedings, is a choice he must make, and he will face the consequences of that choice.


**July 15, 2010**                         **s/ Jerome B. Simandle**
Date                                      JEROME B. SIMANDLE
                                          United States District Judge


---

[7] Further, the Court is mindful of Mr. Moruzin's intentions to engage in disruption if these legal proceedings are not to his liking.  He has recently made similar threats of future disruption in his interview with Dr. Boardman on April 22, 2010 (Ex. 4), and repeated them in his post-hearing correspondence to the Court (e.g., Docket Item 220, supra).  Mr. Moruzin would be well-advised to abandon such tactics.  Enough is enough.

19